IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                      Case No. 4:16-cr-00276-01 KGB

RAMIRO CORTEZ                                                    DEFENDANT

**ORDER**

Before the Court is defendant Ramiro Cortez's motion to reduce his sentence (Dkt. No. 75). Mr. Cortez submitted to the Court a brief in support of his motion (Dkt. No. 76). The government responded in opposition (Dkt. No. 79). For the following reasons, the Court denies Mr. Cortez's motion to reduce his sentence (Dkt. No. 75).

**I.     Background**

On May 9, 2018, Mr. Cortez pled guilty to conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Dkt. Nos. 43, 44). On November 1, 2018, this Court sentenced Mr. Cortez to 213 months of imprisonment in the Bureau of Prisons ("BOP") (Dkt. Nos. 62, 65).

In the pending motion, Mr. Cortez states that he should be granted compassionate release and relies primarily on the risks of contracting COVID-19 in an institutional setting (Dkt. No. 76, at 1-4). Mr. Cortez attaches a list of courses he has completed during his incarceration and represents he has had no infractions in the past year (*Id*., at 4, 16-17). Mr. Cortez also attaches a release plan that includes plans to live with his brother (Dkt. No. 75, at 7-11). Mr. Cortez states that he requested relief from the BOP on September 7, 2020, but has not received a response (*Id*., at 3, Dkt. No. 76, at 10). Therefore, Mr. Cortez petitions this Court. The government does not

contest this Court's jurisdiction to resolve the motion. Instead, the government argues that compassionate release is not warranted in this case (Dkt. No. 79).

## II.     Discussion

This Court has received release requests during the current pandemic that reference the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and that reference what is often referred to as the "compassionate release" provision set forth in 18 U.S.C. § 3582(c)(1)(A).

Section 12003 of the CARES Act presently and temporarily provides for expanded prisoner home confinement under the framework set out in 18 U.S.C. § 3624(c).  *See* CARES Act, Pub. L. No. 116-136, § 12003, 134 Stat. 281, 515–17 (2020).  The CARES Act places decision-making authority solely within the discretion of the Attorney General and the Director of the BOP.  *See id.*; *accord* 18 U.S.C. § 3624(c)(2).  Courts therefore do not have power to grant relief under Section 12003 of the CARES Act.  To the extent Mr. Cortez seeks relief from this Court under the CARES Act, the Court denies his motion.

The Court interprets Mr. Cortez's motion to be a request pursuant to the compassionate release provision of the First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239–40 (2018) (codified at 18 U.S.C. § 3582). For the following reasons, the Court denies Mr. Cortez's motion for compassionate release.

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States,* 560 U.S. 817, 825 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Once a district court has pronounced sentence and the sentence becomes final, the district court may only reconsider or alter the sentence pursuant to statutory authority. *See United States v.*

*Addonizio,* 442 U.S. 178, 189–90 (1979). The compassionate release provision permits a district court to modify a term of imprisonment after it is imposed. *See* 18 U.S.C. § 3582(c)(1)(A).

Until passage of the First Step Act, under the then-governing statute, only the BOP could seek from a district court compassionate release on behalf of an incarcerated federal defendant for extraordinary and compelling reasons. The First Step Act amended the statute to authorize defendants to seek compassionate release on their own behalf, provided that the defendant first asks the BOP to do so and exhausts administrative appeals following denial of this request by the BOP. *See* 18 U.S.C. § 3582(c)(1). Specifically, an inmate may seek a compassionate release directly from the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The BOP may oppose a defendant's motion for compassionate release. The statute authorizes the district court to grant compassionate release, over the BOP's objection, under certain circumstances.

Although the First Step Act does not define the phrase "extraordinary and compelling," it defers to the United States Sentencing Guidelines, which does set out examples. The Court acknowledges that this list predates the COVID-19 outbreak. U.S.S.G § 1B1.13 cmt. n.1. The examples are: (1) the defendant's medical condition is such that he suffers from a "terminal illness" or the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; (2) "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration

in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (3) the defendant's family circumstances include either "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.*

Mr. Cortez in his motion states that his "chronic care for a dislocated shoulder" and periodic dizziness due to high cholesterol makes him more susceptible to suffering serious illness or death if he were to contract COVID-19 (Dkt. No. 76, at 1). Mr. Cortez also takes issue with the BOP's operation of the facility where he is housed contending that 70 percent of inmates have tested positive for COVID-19 and that the BOP is not taking sufficient precautions to safeguard the health of inmates (Dkt. No. 75, at 2-4).[1] The Court determines that, on the record presented, fear of contracting COVID-19 or of experiencing more intense symptoms than the average person are not extraordinary or compelling enough reasons for release. The Court recognizes Mr. Cortez's circumstances and concerns. However, these circumstances and concerns, taken alone or together, do not present "extraordinary and compelling" reasons for release.

---

[1] The government takes issue with Mr. Cortez's representation that 70 percent of inmates at the BOP facility where he is housed have tested positive for COVID-19. It states that, according to the BOP's website as of November 6, 2020, Lompoc USP, where Mr. Cortez is incarcerated, had zero inmates and zero staff members currently positive for COVID-19 (Dkt. No. 79, at 4).

Mr. Cortez meets neither the minimum age nor the served-time requirement under the Guidelines, based on the Court's review of this record. Mr. Cortez does not argue that he meets either of these requirements (Dkt. No. 75, at 3-4).

Even if Mr. Cortez could establish extraordinary and compelling reasons, the Court would deny his request for compassionate release based on consideration of the 18 U.S.C. § 3142(g) and 18 U.S.C. § 3553(a) factors, all of which the Court has considered. Specifically, here, the Court considers the nature and circumstances of the offense, the history and characteristics of Mr. Cortez, and protecting the public from additional crimes by Mr. Cortez. *See* 18 U.S.C. §§ 3142(g)(1), (4); 18 U.S.C. §§ 3553(a)(1), (2)(c).

Mr. Cortez pled guilty to conspiracy to distribute and to possess with intent to distribute methamphetamine. After law enforcement discovered three pounds of methamphetamine in a storage unit, they received information that Mr. Cortez was a source of supply for the methamphetamine (Dkt. No. 79, at 1). When officers stopped a vehicle owned and occupied by Mr. Cortez leaving his residence, officers found almost two pounds of methamphetamine, a bag of marijuana, and $265,000.00 in cash inside the vehicle (*Id.*). A subsequent search of Mr. Cortez's residence yielded five handguns, an assault rifle, and various drug paraphernalia (*Id.*). When he engaged in this offense, Mr. Cortez was on parole for another prior drug-related offense (*Id.*, at 11). Based on these events, when given the opportunity to do so in the past, Mr. Cortez has failed to conform his conduct to what the law requires. The Court understands that Mr. Cortez has taken steps toward rehabilitation and has a release plan. The Court commends him for this,

but based on the record before the Court and for the reasons explained, the Court denies his motion to reduce sentence at this time.

### III.   Conclusion

Based on the findings of fact and conclusions of law above, the Court denies Mr. Cortez's motion to reduce sentence (Dkt. No. 75).

So ordered this 18th day of November, 2020.

_____
Kristine G Baker
United States District Judge